UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kristie Brownell, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>    - against -<br><br>Starbucks Coffee Company,<br><br>     Defendant | 5:22-cv-1199 (FJS/ATB)<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Starbucks Coffee Company ("Defendant") manufactures, labels, markets, and sells French Roast "Ground 100% Arabica Coffee" ("Product").



**I.     PROPERTIES OF COFFEE**

2. Coffee is derived from brewing roasted and ground coffee beans.

3. Coffee beans consist of caffeine (1-2%), coffee oil (10-15%), sucrose and other sugars (about 8%), proteins (about 11%), ash (about 5%), and chlorogenic and caffeic acids (about 6%).

4. Coffee acids include malic acid, tannic acid, maleic acid, oleic acid, oxalic acid, caffeic acid, and chlorogenic acid.

5. The natural caffeine content in coffee causes gastric secretion of additional acids.

6. Over 125 million Americans drink coffee each day, with the average coffee drinker consuming three cups per day.

7. Many coffee drinkers experience indigestion and discomfort from its acidity, with a pH generally between 4.8 and 5.7.

8. To reduce discomfort, coffee drinkers will consume less or dilute it through adding dairy products such as milk or cream.

9. Methods to reduce the acidity or increase the pH of beverages are not uncommon.

10. For example, wine containing high levels of malic acid can be reduced in acidity through treatment with calcium carbonate, potassium bicarbonate, and calcium tartrate.

11. Some cultures add eggshells to reduce the acidity of coffee beans when roasting.

12. Modern deacidification methods include alkaline treatment of coffee beans at elevated temperatures.

13. However, this is accompanied by saponification of coffee oils, changing the coffee's characteristic flavor and aroma.

## II.   "100% ARABICA COFFEE" REPRESENTATIONS

14.   A normal cup of coffee contains about 116 milligrams of potassium.

15.   The addition of potassium is recognized as capable of adjusting the pH of coffee beans to between 5.7 and 6.1, by binding to and neutralizing the naturally occurring acids.

16.   Unlike other methods, added potassium maintains the coffee beans' flavor and aroma, while reducing and eliminating any bitterness.

17.   Recent reports based on laboratory analysis indicated the Product has significantly greater than expected levels of potassium.

18.   According to those knowledgeable about coffee production, this level is likely intentional, because of potassium's recognized use for this purpose.

19.   Added potassium can cause health risks for coffee drinkers with kidney issues, who are generally aware of the amount of potassium in coffee, and excess intake can cause hyperkalemia.

20.   Consumers are misled by the representation the Product is "100% Arabica Coffee" because it is false, deceptive and/or misleading as a result of added potassium.

21.   Defendant makes other representations and omissions with respect to the Product which are false and misleading.

22.   As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $10.99 for 12 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

23.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

24. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

25. Plaintiff is a citizen of New York.

26. Defendant is a Washington corporation with a principal place in Washington.

27. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

28. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold from thousands of physical stores and online in the States Plaintiff seeks to represent.

29. Venue is in this District because a substantial part of the events or omissions giving rise to these claims occurred in Onondaga County, including Plaintiff's purchase, reliance on the identified statements, and subsequent awareness these were false and misleading.

## Parties

30. Plaintiff Kristie Brownell is a citizen of Syracuse, Onondaga County, New York.

31. Defendant Starbucks Corporation is a Washington corporation with a principal place of business in Seattle, King County, Washington.

32. Defendant operates the Starbucks coffee chain and sells ground coffee under the Starbucks brand from its own stores and third-parties including grocery stores, convenience stores, drug stores, big box stores, warehouse club stores and online.

33. Plaintiff purchased the Product from stores including Walmart, 8064 Brewerton Rd, Cicero, NY 13039 and/or Target, 8061 Brewerton Rd, Cicero, NY 13039 between 2020 and 2022, among other times.

34. Plaintiff read and relied on the "100% Arabica Coffee" statement to believe the

contents included only ground coffee and not any additives.

35. Plaintiff bought the Product at or exceeding the above-referenced price.

36. Plaintiff paid more for the Product than she would have had she known the representations were false and misleading, or would not have purchased it.

37. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, features, and/or components.

## Class Allegations

38. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Products during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Texas, South Dakota, Wyoming, Idaho, Alaska, Iowa, Virginia, South Carolina, and Utah who purchased the Products during the statutes of limitations for each cause of action alleged.

39. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

40. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

41. Plaintiff is an adequate representative because her interests do not conflict with other members.

42. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

43. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

44. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

### New York General Business Law ("GBL") §§ 349 and 350

45. Plaintiff incorporates by reference all preceding paragraphs.

46. Plaintiff saw and relied on the "100% Arabica Coffee" statement to believe the contents included only ground coffee and not any additives.

47. Defendant's false, misleading, and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

48. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Violation of State Consumer Fraud Acts
### (Consumer Fraud Multi-State Class)

49. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

50. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

51. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

### Breaches of Express Warranty,
### Implied Warranty of Merchantability/Fitness for a Particular Purpose
### and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

52. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that "100% Arabica Coffee" meant the contents

included only ground coffee and not any additives.

53. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

54. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires, such as coffee which only contained ground coffee beans without additives.

55. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the contents included only ground coffee and not any additives.

56. Defendant's representations affirmed and promised that the contents included only ground coffee and not any additives.

57. Defendant described the Product so Plaintiff believed its contents included only ground coffee and not any additives, which became part of the basis of the bargain that it would conform to its affirmations and promises.

58. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

59. This duty is based on Defendant's outsized role in the market for this type of Product, a leading brand in the sale of ground coffee.

60. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

61. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

62. Defendant received notice and should have been aware of these issues due to

complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

63. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

64. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained only ground coffee and without any additives.

65. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected that its contents included only ground coffee and not any additives, and relied on Defendant's skill and judgment to select or furnish such a suitable product.

### Fraud

66. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that its contents included only ground coffee and not any additives.

67. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

### Unjust Enrichment

68. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   November 13, 2022

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com