UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kristie Brownell, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>Starbucks Coffee Company,<br><br>Defendant. | 5:22-cv-01199-FJS-ATB |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT STARBUCKS CORPORATION'S MOTION TO DISMISS COMPLAINT**

SMRH:4855-3636-5897

**TABLE OF CONTENTS**

Page(s)

I.     INTRODUCTION .................................................................................................... 1

II.    SUMMARY OF ALLEGATIONS .......................................................................... 3

       A.    Plaintiff's Purchases from Starbucks ...................................................... 3

       B.    Plaintiff Acknowledges That a Normal Cup of Coffee Has Potassium, but Alleges that "Recent Reports" Indicate Ground Starbucks® French Roast Coffee has "Greater than Expected" Levels of Potassium Which is "Likely Intentional" ....... 3

       C.    Potassium is an Important Nutrient, Which FDA Concludes is Under-Consumed by the United States Population ............................................................. 4

       D.    Coffee Is Exempt from Declaring Its Potassium Content on its Label ................... 5

III.   LEGAL STANDARD ON MOTION TO DISMISS ............................................... 6

IV.    THE COURT SHOULD DISMISS THE COMPLAINT ....................................... 7

       A.    Plaintiff Lacks Standing Because She Has Not Alleged She Suffered a Concrete and Particularized Harm ....................................................................... 7

       B.    Plaintiff Fails to Sufficiently Plead that Starbucks Added Potassium To The Product ............................................................................... 9

       C.    Plaintiff's Complaint is Preempted by Federal Law and Regulations Which Exempt Coffee From Labeling the Quantity of Potassium ................................. 12

       D.    A Reasonable Consumer Would Not Be Materially Misled That 100% Arabica Beans Says Anything about the Potassium (or Any Other Mineral) Content ....... 14

       E.    Plaintiff's Other Claims Also Fail as a Matter of Law ........................................ 16

             1.    Plaintiff Has Failed to State a Claim for Breach of Express Warranty .... 17

             2.    Plaintiff Cannot Allege Facts Sufficient to Support Her Implied Warranty Claim .......................................................................... 17

             3.    Plaintiff's Unjust Enrichment Claim is Entirely Duplicative of Her Other Claims ........................................................................ 17

       F.    Plaintiff's "State Consumer Fraud" Claim is Not Cognizable ............................. 18

V.     CONCLUSION ..................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*In re Aluminum Warehousing Antitrust Litig.*
  2014 WL 4743425 (S.D.N.Y. Sep. 15, 2014) ..................................................... 18, 19

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ................................................................................. 7, 9, 11

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) .................................................................................... 6, 10

*Bernheim v. Litt*
  79 F.3d 318 (2d Cir. 1996) .................................................................................. 10

*Budhani v. Monster Energy Co.*
  527 F. Supp. 3d 667 (S.D.N.Y. 2021) ................................................................... 15

*Carter v. HealthPort Techs., LLC*
  822 F.3d 47 (2d Cir. 2016) .................................................................................... 6

*Chen v. Dunkin' Brands, Inc.*
  954 F.3d 492 (2d Cir. 2020) ................................................................................ 15

*Colella v. Atkins Nutritionals, Inc.*
  348 F. Supp. 3d 120 (E.D.N.Y. 2018) .................................................................... 9

*Corsello v. Verizon N.Y., Inc.*
  967 N.E.2d 1177 (N.Y. 2012) .............................................................................. 17

*Critcher v. L'Oreal USA, Inc.*
  959 F.3d 31 (2d Cir. 2020) .............................................................................. 12, 13

*Davis v. Hain Celestial Grp., Inc.*
  297 F. Supp. 3d 327 (E.D.N.Y. 2018) ................................................................... 18

*Fink v. Time Warner Cable*
  714 F.3d 739 (2d Cir. 2013) ................................................................................ 15

*Gaminde v. Lang Pharma Nutrition, Inc.*
  2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ...................................................... 7, 8

*Hawkins v. Coca-Cola Co.*
  2023 WL 1821944 (S.D.N.Y. Feb. 7, 2023) .......................................................... 11

*Hoffman v. Kraft Heinz Foods Co.*
    2023 WL 1824795 (S.D.N.Y. Feb. 7, 2023).................................................................11

*Izquierdo v. Mondelez Int'l, Inc.*
    2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ..............................................................9

*Kamara v. Pepperidge Farm, Inc.*
    570 F. Supp. 3d 69 (S.D.N.Y. 2021)..........................................................................17

*Kimca v. Sprout Foods, Inc.*
    2022 WL 1213488 (D.N.J. Apr. 25, 2022) .............................................................8, 9

*Koenig v. Boulder Brands, Inc.*
    995 F. Supp. 2d 274 (S.D.N.Y. 2014).........................................................................18

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992)......................................................................................................7

*Mazella v. Coca-Cola Co.*
    548 F. Supp. 3d 349 (S.D.N.Y. 2021).........................................................................17

*Myers v. Wakefern Food Group*
    2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) ...............................................................10

*Nelson v. MillerCoors, LLC*
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) ........................................................................18

*Nemphos ex rel. C.G.N. v. Nestle Waters N. Am., Inc.*
    775 F.3d 616 (4th Cir. 2015) ......................................................................................14

*Orlander v. Staples, Inc.*
    802 F.3d 289 (2d Cir. 2015).........................................................................................14

*Parks v. Ainsworth Pet Nutrition, LLC*
    2020 WL832863 (S.D.N.Y. Feb. 20, 2020).................................................................16

*Parks v. Ainsworth Pet Nutrition, LLC*
    377 F. Supp. 3d 241 (S.D.N.Y. 2019)....................................................................15, 16

*Petrosino v. Stearn's Prods.*
    2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) ............................................................17

*In re Plum Baby Food Litig.*
    2022 WL 16552786 (D.N.J. Oct. 31, 2022)...........................................................6, 8, 9

*Santiful v. Wegmans Food Markets, Inc.*
    Case No.7:20-cv-02933-NSR, 2023 WL _____ (S.D.N.Y., Mar. 10, 2023)........................10

*Silva v. Smucker Nat. Foods, Inc.*
  2015 WL 5360022 (E.D.N.Y. Sep. 14, 2015)...................................................17

*Spokeo, Inc. v. Robins*
  578 U.S. 330 (2016).............................................................................................6

*TransUnion LLC v. Ramirez*
  594 U.S. __, 141 S. Ct. 2190 (2021)...................................................................7

*In re Trilegiant Corp.*
  11 F. Supp. 3d 82 (D. Conn. 2014)................................................................18, 19

*Turek v. General Mills, Inc.*
  662 F.3d 423 (7th Cir. 2011) .............................................................................13

*Turnipseed v. Simply Orange Juice Co.*
  2022 WL 657413 (S.D.N.Y. Mar. 4, 2022) ........................................................11

*Warren v. Stop & Shop Supermarket, LLC*
  592 F. Supp. 3d 268 (S.D.N.Y. 2022)..................................................................18

*Womack v. EVOL Nutrition Assocs.*
  2022 WL 3371216 (N.D.N.Y. Aug. 16, 2022) .....................................................10

*Wurtzburger v. Ky. Fried Chicken*
  2017 WL 6416296 (S.D.N.Y. Dec. 13, 2017) ......................................................15

**Statutes and Regulations**

21 U.S.C. §§ 331(a)-(c)........................................................................................12

21 U.S.C. § 343-1 ...........................................................................................12, 14

21 U.S.C. § 343 (q)(2) ..........................................................................................12

Federal Food, Drug, and Cosmetic Act ..........................................................12, 13

New York General Business Law §§ 349-350 ...........................2, 7, 12, 13, 14, 15, 16

Nutritional Labeling and Education Act ................................................................12

21 C.F.R. § 101.9(j)(4).........................................................................................5, 13

21 C.F.R. § 101.9(c)(8)(ii) .....................................................................................4

81 Fed. Reg. 33,741, 33,898 (May 27, 2016) (to be codified at 21 C.F.R. pt. 101)
  .................................................................................................................4, 5, 13, 14

81 Fed. Reg. at 33,800 .......................................................................................4, 5

81 Fed. Reg. at 33,893 ................................................................................................5, 14

81 Fed. Reg. at 33,894 ......................................................................................................14

81 Fed. Reg. at 34,027 ................................................................................................5, 14

**Federal Rules of Civil Procedure**

Rule 8 ..................................................................................................................................11

Rule 8(a)......................................................................................................................2, 6, 18

Rule 8(a)(2) ........................................................................................................................18

Rule 12(b)(1).....................................................................................................................6, 7

Rule 12(b)(6).....................................................................................................................6, 9

## I.    **INTRODUCTION**

Plaintiff Kristie Brownell's Complaint must be dismissed because it fails to allege facts to support her baseless conclusion that potassium was added to the Ground Starbucks® French Roast coffee she purchased.[1]  Plaintiff cannot dispute that potassium is naturally occurring in coffee and is a nutrient that the Food and Drug Administration (FDA) recommends be consumed.  She admits that a normal cup of brewed coffee contains 116 milligrams of potassium.  (Complaint, ¶ 14.)  She makes no allegation that she tested the coffee she purchased or that she suffered any adverse reaction when she drank her brewed coffee to suggest that it had elevated levels of potassium.  Instead, Plaintiff relies on unnamed "recent reports" based on unspecified "laboratory analysis" supposedly showing that the Ground Starbucks® French Roast coffee has "significantly greater than expected levels of potassium" – but she does not allege those levels.  (*Id.*, ¶ 17.)  Article III and the rules of pleading require more than speculation to state a claim that Starbucks added potassium to its ground coffee rendering the label's claim of "100% Arabica Coffee" false or deceptive.

The FDA has identified potassium as an essential nutrient, the underconsumption of which is an issue of public health concern for the majority of the U.S. population.  For this reason, the FDA recommends that adults consume 4,200 milligrams of potassium per day.  The FDA recognizes that brewed coffee contains some potassium, but does not require that potassium levels be disclosed on ground coffee labels.  Without an allegation of how much potassium is in the coffee brewed from the Ground Starbucks® French Roast coffee Plaintiff purchased, she has not alleged an elevated level to show she has suffered an injury in fact or from which it can be inferred that potassium was added.  Moreover, requiring Starbucks to disclose the amount of potassium in the Ground Starbucks® French Roast coffee would improperly impose a labeling obligation not required by the FDA.

---

[1] Starbucks denies the allegations of the Complaint, and specifically denies that it adds potassium to Ground Starbucks® French Roast coffee.  As described below, Starbucks treats the allegations as true for purposes of this motion except those allegations for which Plaintiff has not plausibly alleged sufficient facts.

Plaintiff seeks to represent a class of New York consumers (Complaint, ¶ 38) pursuing the following claims: (1) Violation of New York General Business Law ("GBL") §§ 349, 350, (2) "Violation of State Consumer Fraud Acts," (3) "Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose and Magnuson Moss Warranty Act," (4) Fraud, and (5) Unjust Enrichment. Plaintiff's claims all fail as a matter of law. (*Id.*, ¶¶ 45-48 and 52-68.)

Plaintiff's GBL claims fail because Plaintiff lacks Article III standing as she has not alleged a concrete and particularized injury; she has not plausibly alleged the Ground Starbucks® French Roast coffee contains added potassium; her claims are preempted; and she has not alleged facts showing a reasonable consumer would be materially misled by the statement "100% Arabica Coffee."

Plaintiff's ancillary claims for breach of warranty and unjust enrichment fail for the same reasons as her GBL claims. Plaintiff's breach of implied warranty claim additionally fails because she does not allege facts that Ground Starbucks® French Roast coffee is unfit for human consumption. Plaintiff's unjust enrichment claim also should be dismissed because it is duplicative of her other claims.

Plaintiff also impermissibly includes a claim for "Violation of State Consumer Fraud Acts", though her Complaint does not specify to which acts she is referring. Plaintiff's barebones pleading of "Violations of State Consumer Fraud Acts" fails to satisfy Rule 8(a) pleading requirements.

For these reasons, and as set forth more fully below, Plaintiff's Complaint should be dismissed in its entirety.

## II. SUMMARY OF ALLEGATIONS

### A. Plaintiff's Purchases from Starbucks

Plaintiff alleges she purchased Ground Starbucks® French Roast coffee with the label shown below from stores including Walmart "and/or Target" between 2020 and 2022.[2]



(Complaint, ¶¶ 1, 33.)  She alleges that she read "100% Arabica Coffee" (which is circled on the image in her Complaint) and believed it meant the coffee "included only ground coffee and not any additives."  (*Id.*, ¶ 34.) Plaintiff alleges she "paid more for the Product than she would have had she known the representations were false and misleading, or would not have purchased it."  (*Id.*, ¶ 36.)  Plaintiff alleges that she chose between Starbucks coffee and other unidentified products which allegedly did not misrepresent their attributes.  (*Id.* at ¶ 37.)

### B. Plaintiff Acknowledges That a Normal Cup of Coffee Has Potassium, but Alleges that "Recent Reports" Indicate Ground Starbucks® French Roast Coffee has "Greater than Expected" Levels of Potassium Which is "Likely Intentional"

Plaintiff alleges that a normal cup of coffee contains about 116 mg of potassium.  (*Id.*, ¶ 14.)  *See also* U.S. Department of Agriculture, Agricultural Research Service. FoodData Central ⧉, 2019; https://fdc.nal.usda.gov/fdc-app.html#/food-details/2345935/nutrients (last accessed on Feb. 23, 2023) (showing 118 mg of potassium for 8 fluid ounce cup of coffee).  Plaintiff alleges

---

[2] Plaintiff erroneously named Starbucks Coffee Company which is the trade (i.e., the doing business as) name of Starbucks Corporation.

"[r]ecent reports based on laboratory analysis indicated the Product has significantly greater than expected levels of potassium." (*Id.*, ¶ 17.) Plaintiff does not attach the reports or the laboratory analysis, nor does Plaintiff plead the name of the report, the identity of the laboratory or the level of potassium allegedly shown in the reports and laboratory analysis. (*Id.*) Instead, she alleges that "[a]ccording to those knowledgeable about coffee production, this level is likely intentional, because of potassium's recognized use for this purpose." (*Id.*, ¶ 18.) Plaintiff does not allege who those "knowledgeable" persons are or any other basis to assert that potassium was intentionally added.

Though Plaintiff alleges that added potassium can pose health risks for coffee drinkers with kidney issues, Plaintiff does not allege that she has kidney issues or that she suffered an acute reaction after drinking coffee brewed from Ground Starbucks® French Roast coffee. (*Id.*, ¶ 19.)

> ### C.    Potassium is an Important Nutrient, Which FDA Concludes is Under-Consumed by the United States Population

In 2016, the FDA updated its Nutrition Facts label regulations to, among other things, reflect changes to scientific evidence and encourage consumption of potassium. Before 2016, including potassium as part of the nutrition facts panel was voluntary. 21 C.F.R. § 101.9(c)(8)(ii). In 2016, the FDA mandated that potassium content be included on the nutrition facts panel of some foods. *Id.* The FDA also increased the recommended daily intake of potassium from 3,500 mg to 4,200 mg. *Id.*; Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,741, 33,898 (May 27, 2016) (to be codified at 21 C.F.R. pt. 101) (hereinafter "Food Labeling"). The FDA noted that "[u]nderconsumption of the essential nutrients vitamin D, calcium, potassium, and fiber are public health concerns for the majority of the U.S. population . . . " Food Labeling, 81 Fed. Reg. at 33,800. The FDA

explained that "the scientific evidence regarding potassium had changed, such that [the FDA] recognized potassium's importance in the risk reduction of certain chronic diseases." *Id.* at 33,893. It stated that, "[g]iven the benefits of adequate potassium intake . . . [the FDA] concluded that potassium is a nutrient of public health significance for the general U.S. population " and supported its mandatory declaration. *Id.*

With regard to patients with chronic kidney disease, the FDA acknowledged that mandatory labeling of potassium would be of assistance, but noted that it was not a factor in requiring mandatory labeling. Food Labeling, 81 Fed. Reg. at 33,893. The FDA "concluded that potassium is a nutrient of public health significance for the general U.S. population and its declaration is necessary to assist consumers in maintaining healthy dietary practices." *Id.*

**D.    Coffee Is Exempt from Declaring Its Potassium Content on its Label**

As part of the regulatory process in 2016, the FDA received comments from the public which raised the issue that, although coffee is exempt from nutritional labeling under 21 C.F.R. § 101.9(j)(4), it may have declarable levels of potassium. *Id.* at 33,894; Food Labeling: Serving Sizes of Foods That Can Reasonably Be Consumer At One Eating Occasion, 81 Fed. Reg. 34,000, 34,026-27 (May 27, 2016) (to be codified at 21 C.F.R. pt. 101) (hereinafter "Serving Sizes"). The FDA responded that it "intend[s] to consider the future applicability of the exemption with respect to coffee beans (whole or ground), . . . in a separate rulemaking." Serving Sizes, 81 Fed. Reg. at 34,027.

Coffee, tea and spices are exempt from the requirement to include nutrition labels on food packaging. 21 C.F.R. §101.9(j)(4); *see also Guidance for Industry: A Food Labeling Guide*, p. 64, L120, 2013 (available at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-food-labeling-guide, last accessed on Feb. 23, 2023).

## III.    LEGAL STANDARD ON MOTION TO DISMISS

To pursue a claim in federal court, a plaintiff must have Article III standing, which generally requires the plaintiff to plead that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The plaintiff bears the burden of demonstrating standing and a standing challenge is properly raised by a motion to dismiss brought under Rule 12(b)(1). *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016).

When a 12(b)(1) motion to dismiss challenges the sufficiency of the allegations in the complaint regarding standing, that is a facial challenge and the court will essentially apply the standard applicable under Rule 12(b)(6) and ask whether the plaintiff has plausibly pleaded each element of Article III standing. *Carter*, 822 F.3d at 56; *In re Plum Baby Food Litig.*, 2022 WL 16552786, at *5 (D.N.J. Oct. 31, 2022).

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6). To survive a motion to dismiss, "a complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citation, quotations, and emphasis omitted). Thus, a complaint that sets forth a mere "formulaic recitation of the elements" will not survive a motion to dismiss; indeed, a plaintiff must provide "enough facts to state a claim to relief that is plausible on its face" and bear the burden of "nudg[ing] their claims across the line from conceivable to plausible." *Id.* at 570. Determining whether a complaint states a plausible claim

for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## IV.     THE COURT SHOULD DISMISS THE COMPLAINT

### A.     Plaintiff Lacks Standing Because She Has Not Alleged She Suffered a Concrete and Particularized Harm

The Complaint should be dismissed because Plaintiff failed to allege facts showing that she suffered an injury in fact from buying the Ground Starbucks® French Roast coffee. *See TransUnion LLC v. Ramirez*, 594 U.S. __, 141 S. Ct. 2190, 2203 (2021) (a plaintiff must adequately plead facts showing a concrete harm to satisfy Article III standing); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992) ("[T]he injury must affect the plaintiff in a personal and individual way."). Here, Plaintiff's allegations of injury consist only of unsupported assertions that the coffee she purchased contained added potassium, and vague allegations that she would not have purchased it, or paid the price she did, if she had known. (Complaint, ¶¶ 17, 36.) These speculative and conclusory allegations do not rise to the level of an individual and particularized harm.

In *Gaminde v. Lang Pharma Nutrition, Inc.*, 2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019), the court granted a Rule 12(b)(1) motion to dismiss because the plaintiff failed to allege sufficient facts that he suffered an injury in fact. Specifically, the plaintiff alleged that he bought a bottle of CVS Krill oil which contained less than the labeled 300 mg of Omega-3 Krill oil. The plaintiff cited a *Journal of the Science of Food and Agriculture* article which described a USDA study that concluded the bottles tested contained only 60% of the amount represented. The court dismissed plaintiff's claims under GBL §§ 349 and 350 as well as for breach of express and implied warranty, unjust enrichment and fraud. "So here—it is speculation to allege that because two CVS Krill Oil bottles in a USDA study were found to have less than the stated amount of

Omega-3 Krill Oil, the bottle that Gaminde [the plaintiff] purchased must have as well." *Id*. at *2-3 (plaintiff's "failure to allege that he tested his bottle of CVS Krill Oil—indeed, his failure to make any allegation regarding how he knows that it was mislabeled—is fatal.").

Here, as in *Gaminde*, Plaintiff fails to allege facts showing that she suffered a concrete and particularized injury from buying the Ground Starbucks® French Roast coffee. Plaintiff does not allege that she tested the coffee she brewed from the Ground Starbucks® French Roast coffee that she bought. Rather, she makes opaque references to "[r]ecent reports based on laboratory analysis", but does not cite or attach the reports or laboratory analysis. (Complaint, ¶ 17.) She fails to allege the level of potassium in the coffee that she brewed, even though she admits a "normal cup of coffee contains about 116 milligrams of potassium." (*Id*., ¶ 14.) She does not allege that she suffered an adverse reaction to the coffee (or that she brewed and consumed the coffee at all). Thus, the allegation that the Ground Starbucks® French Roast coffee she purchased contained added potassium is speculative.

Plaintiff may argue that she suffered economic injury by paying a price premium for the Product, but conclusory allegations regarding a supposed price premium are insufficient to support a claim for economic injury. In two recent putative class actions asserting false advertising claims against baby food manufacturers based on the alleged presence of undisclosed heavy metals, the courts held that conclusory price premium allegations were insufficient to find injury in fact. *See In re Plum Baby Food Litig.*, 2022 WL 16552786, at *8 (D.N.J. Oct. 31, 2022) ("Threadbare allegations that, had the plaintiff known about an alleged deficiency in a product, they would not have paid that price for said product, without more, is insufficient to find injury-in-fact."); *Kimca v. Sprout Foods, Inc.*, 2022 WL 1213488, at *8 (D.N.J. Apr. 25, 2022) (requiring additional factual support for the plaintiff's injury claim beyond a mere allegation that

plaintiff would not have paid as much, such as specifically identifying an alternative, cheaper product).

Here, Plaintiff's allegation that she "paid more for the Product than she would have had she known the representations were false and misleading, or would not have purchased it," is very similar to the kinds of allegations rejected in *Plum* and *Kimca*. (Complaint, ¶ 36.)  While Plaintiff alludes to comparable products, stating that the Ground Starbucks® French Roast coffee is sold at prices "higher than similar products, represented in a non-misleading way," she does not allege any facts identifying these alternative products, or even allege that they are cheaper. (*Id.*, ¶ 22.)  Accordingly, the Complaint should be dismissed.  *Colella v. Atkins Nutritionals, Inc.,* 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (dismissing complaint because plaintiff only conclusorily asserted that the defendant charged a premium); *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) (allegation that plaintiff paid a premium price is insufficient to allege injury).

### B.    Plaintiff Fails to Sufficiently Plead that Starbucks Added Potassium To The Ground Starbucks® French Roast Coffee

Plaintiff fails to allege sufficient facts to support her conclusion that Starbucks added potassium to Ground Starbucks® French Roast coffee, and instead relies on speculation and the possibility that potassium was added.  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  When the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.*

at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  At the motion to dismiss stage, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in its favor. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996).  However, if a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed.  *Bell Atl. Corp.,* 550 U.S. at 570.

In *Womack v. EVOL Nutrition Assocs.*, 2022 WL 3371216 (N.D.N.Y. Aug. 16, 2022), the court dismissed a GBL § 349 claim relating to alleged failure to list an ingredient.  Among other allegations, the plaintiff alleged that the defendant hid the amount of an ingredient in its beverage and that the ingredient in large doses could cause breathing trouble and unconsciousness.  The court reasoned that the plaintiff failed to "plausibly allege an amount-based theory of liability" because there were no allegations regarding the amount of the ingredient or facts from which the court could infer it was a large amount.  *Id.* at *5.

Similarly, a general reference to laboratory tests has been held insufficient where the plaintiff does not provide details about the tests.  In *Myers v. Wakefern Food Group*, 2022 WL 603000, *9-10 (S.D.N.Y. Mar. 1, 2022), the court dismissed the complaint alleging that a food contained artificial flavorings because the plaintiff did not provide any details about what the laboratory tests entailed and the court was not required to accept the plaintiff's conclusory statements without more.  In so holding, the court noted that the plaintiff does not "describe the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc." or how the findings arrived at her conclusion that the food contained artificial flavors.  The same results were reached in four other recent cases where the plaintiff relied on general references to laboratory tests.  *See Santiful v. Wegmans Food Markets, Inc.*, Case No. 7:20-cv-02933-NSR, 2023 WL _____, at *__ (S.D.N.Y., Mar. 10,

2023) (dismissing claims because though laboratory results were included in complaint, the results were "interpreted solely by their attorneys, with no support from, or even identification of, the researcher who conducted the analysis, or of any other expert."); *Hoffman v. Kraft Heinz Foods Co.*, 2023 WL 1824795, at *7-8 (S.D.N.Y. Feb. 7, 2023) (dismissing claims because the plaintiffs failed to allege details about the laboratory tests); *Hawkins v. Coca-Cola Co.*, 2023 WL 1821944, at *8 (S.D.N.Y. Feb. 7, 2023) (same); *Turnipseed v. Simply Orange Juice Co.*, 2022 WL 657413, *4 (S.D.N.Y. Mar. 4, 2022) (same).

Here, Plaintiff fails to plausibly allege facts that Starbucks has mislabeled Ground Starbucks® French Roast coffee as "100% Arabica Coffee" because it has "added potassium." Plaintiff acknowledges that brewed coffee normally contains 116 mg of potassium. (Complaint, ¶ 14.) She alleges the Ground Starbucks® French Roast coffee has "greater than expected levels of potassium" but does not specify what level of potassium coffee brewed from it contains. (*Id.*, ¶ 17.) She refers to "recent reports based on laboratory analysis" but fails to plead the levels of potassium shown on those report or attach the reports. (*Id.*, ¶ 17.) Her only basis for claiming that Starbucks adds potassium is speculation that the unspecified higher level of potassium "is likely intentional" to maintain flavor and reducing bitterness. (*Id.*, ¶¶ 16, 18.) Though Plaintiff alleges that added potassium can cause health risks for some in the population, she does not allege *she* suffered an acute reaction from consuming coffee brewed from Ground Starbucks® French Roast coffee. (*Id.*, ¶19.) Given that some level of potassium can be expected in brewed coffee, Plaintiff should be required to plead the level of potassium in the coffee brewed from the Ground Starbucks® French Roast coffee she purchased and explain why that level means Starbucks necessarily added potassium. The "sheer possibility" that Starbucks committed misconduct does not satisfy Plaintiff's Rule 8 obligations. *Iqbal*, 556 U.S. at 678-79.

**C.    Plaintiff's Complaint is Preempted by Federal Law and Regulations Which Exempt Coffee From Labeling the Quantity of Potassium**

Plaintiff's claims are preempted because the FDA exempted ground coffee from nutrition facts labeling requirements even though the FDA expects ground coffee to contain declarable levels of potassium.  Whether a claim is preempted turns on Congress's intent and the analysis begins with statutory text in question.  *Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31, 34-35 (2d Cir. 2020) (affirming granting of motion to dismiss GBL §§ 349 and 350 claims on the grounds that they were preempted by FDA regulations).

The Federal Food, Drug, and Cosmetic Act (the "FDCA") grants the FDA power to ensure that foods are "safe, wholesome, sanitary, and properly labeled."  21 U.S.C. §§ 331(a)-(c).  In 1990, Congress amended the FDCA with the Nutritional Labeling and Education Act which includes an express preemption clause:

> (a) Except as provided in subsection (b), no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce-
> …
>
> **(4)** any requirement for nutrition labeling of food **that is not identical to the requirement** of section 343(q) of this title, except that this paragraph does not apply to food that is offered for sale in a restaurant or similar retail food establishment that is not part of a chain with 20 or more locations doing business under the same name (regardless of the type of ownership of the locations) and offering for sale substantially the same menu items unless such restaurant or similar retail food establishment complies with the voluntary provision of nutrition information requirements under section 343(q)(5)(H)(ix) of this title, or

21 U.S.C. § 343-1 (emphasis added).  Section 343(q)(2) authorizes the Secretary of Health and Human Services to issue regulations regarding labeling nutrient information to assist consumers in maintaining healthy dietary practices.  21 U.S.C. §343 (q)(2).

In *Critcher*, the Second Circuit affirmed dismissal of a putative class action alleging claims under GBL §§ 349 and 350 relating to cosmetics that were labeled in accordance with FDA regulations concerning net weight, but which plaintiff contended were misleadingly labeled because she could not access the full amount of the cosmetics. *Critcher,* 959 F.3d at 36. The Second Circuit, having reviewed the preemption clause and the regulations, concluded that the claim was preempted because the only way for the defendant to avoid liability would be to make an additional disclosure on the packaging. *Id.* Allowing plaintiffs to "move forward with their claims, they would be using state law to impose labeling requirements on top of those already mandated in the FDCA and the regulations promulgated thereunder." *Id.*

Importantly, the Second Circuit cited with approval *Turek v. General Mills*, *Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) in the related context of FDCA-food regulations which held that the plaintiff's claims attempting to impose additional labeling requirements regarding the fiber content of a food product were preempted. "In that case, the Seventh Circuit noted that even when additional 'disclaimers [on a product's packaging] would be a good thing" for the consumer, as long as those additional-disclaimer requirements are 'not identical to the labeling requirements imposed on such products by federal law, . . . they are barred."" *Critcher*, 959 F.3d at 37.

Here, requiring Starbucks to list the level of potassium on the Ground Starbucks® French Roast coffee label would be an additional disclosure not presently required by law or regulation. The FDA exempted coffee from the requirement for nutrition labels on food packaging. 21 C.F.R. §101.9(j)(4); *see also Guidance for Industry: A Food Labeling Guide*, p. 64, L120, 2013 (available at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-food-labeling-guide, last accessed on Feb. 23, 2023). Recently, in

mandating potassium disclosures for other foods, the FDA acknowledged that coffee could contain reportable amounts of potassium and deferred the issue.  Food Labeling, 81 Fed. Reg. at 33,894; Serving Sizes, 81 Fed. Reg. at 34,027.  It also acknowledged the mandatory labeling would be of assistance to patients with chronic kidney disease, but nonetheless did not require that coffee labels disclose potassium levels.  Food Labeling, 81 Fed. Reg. at 33,893.

Plaintiff's claims are preempted because Plaintiff seeks to add additional and different obligations on Ground Starbucks® French Roast coffee's label than required by the FDA. Plaintiff contends the "100% Arabica Beans" representation on the label is false because Ground Starbucks® French Roast coffee contains added potassium.  (Complaint, ¶ 20.)  To avoid liability, Starbucks would need to add a potassium disclosure, which the FDA has already considered and concluded is not required.  Accordingly, any claim that Starbucks should have disclosed the potassium content is preempted.  *See also Nemphos ex rel. C.G.N. v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 624-25 (4th Cir. 2015) (plaintiff's claim that bottled water contained excess fluoride was preempted by 21 U.S.C. § 343-1 and FDA regulations establishing a standard of identity for bottled water).

### D.    A Reasonable Consumer Would Not Be Materially Misled That 100% Arabica Beans Says Anything about the Potassium (or Any Other Mineral) Content

Plaintiff is unable to establish her GBL claims because a reasonable consumer would not be misled to think that "100% Arabica Beans" means anything about the potassium content or the content of any other mineral or nutrient in the coffee beans.  To state a claim under GBL §§ 349 and 350, Plaintiff must allege that Starbucks "engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).  To satisfy the materially misleading element, Plaintiff "must plausibly allege that a significant

portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 676 (S.D.N.Y. 2021) (citations omitted).

"[I]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (affirming dismissal of claims under GBL §§ 349 and 350 ). "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Id.* at 501 (citing *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019)); *see also Wurtzburger v. Ky. Fried Chicken*, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) ("[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole."); *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

A reasonable consumer would read "100% Arabica Beans" to mean that the bag contains coffee ground from arabica beans. "Arabica" means "an evergreen shrub or tree (Coffea arabica) yielding seeds that produce a high-quality coffee and form a large portion of the coffee of commerce" and "the seeds of arabica especially roasted and often ground." *See* https://www.merriam-webster.com/dictionary/arabica last accessed on February 26, 2023. The phrase "100% Arabica Beans" makes no reference to the nutritional content of the coffee. Thus, no reasonable consumer would be misled by this designation.

In addition, to the extent Plaintiff claims she believed "100% Arabica Beans" was a representation about the potassium content, she has not alleged there was a material misrepresentation. In *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019), the plaintiff alleged that pet food labeled as "natural" was misleading because

it contained glyphosate.  The plaintiff did not allege "the amount of glyphosate in the Products or whether that amount is harmful or innocuous." *Id*.  The court dismissed the complaint for failing to allege a materially misleading representation, and gave the plaintiff an opportunity to amend to plead the amount of glyphosate in the product to support an inference that there was a material amount of glyphosate in the products.  *Id*.  The plaintiff amended the complaint to allege the laboratory results showing the amount of glyphosate.  *Parks v. Ainsworth Pet Nutrition, LLC*, 2020 WL832863, *3 (S.D.N.Y. Feb. 20, 2020) (adding allegation that laboratory testing showed the presence of glyphosate at a level of 19.85 parts per billion).  Nonetheless, even with this additional allegation, the court dismissed the amended complaint, reasoning that the level of glyphosate was negligible and lower than the FDA's limit, such that labeling the food "'natural' is not materially misleading to a reasonable consumer." *Id*.

Here, having not alleged the levels of potassium in the coffee she brewed from the Ground Starbucks® French Roast coffee she purchased, Plaintiff has not alleged facts to support an inference that "100% Arabica Beans" was materially misleading.  Accordingly, the Complaint should be dismissed.

### E.    Plaintiff's Other Claims Also Fail as a Matter of Law

Plaintiff's claims for breach of express warranty, breach of implied warranty, and unjust enrichment are based on the same facts as her GBL claims and can similarly be dismissed because, as explained above, Plaintiff has not plausibly alleged any false or deceptive or materially misleading statements to support these claims.  Plaintiff's claims also suffer from additional fatal defects, as explained below, which provide further independent bases for dismissal.

SMRH:4855-3636-5897                                     -16-

1.    <u>Plaintiff Has Failed to State a Claim for Breach of Express Warranty</u>

To state a claim for breach of express warranty under New York law, "a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Petrosino v. Stearn's Prods.*, 2018 WL 1614349, at *8 (S.D.N.Y. Mar. 30, 2018) (citation omitted).  However, Plaintiff has failed to plausibly plead facts to support the conclusion that the Ground Starbucks® French Roast coffee contains added potassium.  *See Mazella v. Coca-Cola Co.,* 548 F. Supp. 3d 349, 361 (S.D.N.Y. 2021) (dismissing breach of warranty claims because plaintiff failed to plausibly allege any factual misrepresentation on the product label).  Accordingly, Plaintiff has failed to satisfy the first element and her claim must be dismissed.

2.    <u>Plaintiff Cannot Allege Facts Sufficient to Support Her Implied Warranty Claim</u>

Courts have held that a food product is unmerchantable only if it is "unfit for human consumption." *Silva v. Smucker Nat. Foods, Inc.*, 2015 WL 5360022, at *11 (E.D.N.Y. Sep. 14, 2015); *see also Kamara v. Pepperidge Farm, Inc.,* 570 F. Supp. 3d 69, 80 (S.D.N.Y. 2021).  The implied warranty of merchantability when made in connection with food relates to whether it is fit for human consumption and does not guarantee that "the product will fulfill a 'buyer's every expectation.'" *Silva*, 2015 WL 5360022, at *11 (citation omitted).  Plaintiff does not, and cannot, allege that Ground Starbucks® French Roast coffee is unfit for human consumption.  Thus, her breach of implied warranty claim must be dismissed.

3.    <u>Plaintiff's Unjust Enrichment Claim is Entirely Duplicative of Her Other Claims</u>

Finally, Plaintiff's unjust enrichment claim must be dismissed because it is entirely duplicative of her other claims.  *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y.

2012) ("[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim"). Although in some cases a plaintiff may "plead unjust enrichment in the alternative", such claims cannot be "merely duplicative of their other causes of action." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017); *Warren v. Stop & Shop Supermarket, LLC*, 592 F. Supp. 3d 268, 287 (S.D.N.Y. 2022). Where, as here, Plaintiff's unjust enrichment claim is based on the same underlying conduct – i.e., the allegation that the Ground Starbucks® French Roast coffee contains added potassium – courts routinely dismiss unjust enrichment claims as duplicative. *See e.g., Davis v. Hain Celestial Grp., Inc.,* 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290-91 (S.D.N.Y. 2014). Plaintiff's unjust enrichments claim should be dismissed.

### F.     Plaintiff's "State Consumer Fraud" Claim is Not Cognizable

Plaintiff's vague references to "State Consumer Fraud Acts" are insufficient to meet the requirements of Rule 8(a). (*See* Complaint, ¶¶ 38, 49-51); Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim"). Courts in the Second Circuit routinely dismiss claims which merely list state consumer fraud statutes without addressing the elements of the claims. *See In re Aluminum Warehousing Antitrust Litig.*, 2014 WL 4743425, at *1 (S.D.N.Y. Sep. 15, 2014) (dismissing claims where plaintiffs failed to identify elements or explain "how their factual allegations establish valid claims for relief under them") (collecting cases); *In re Trilegiant Corp.*, 11 F. Supp. 3d 82, 124 (D. Conn. 2014) ("[m]erely listing possible causes of action without providing a 'short and plain statement of the claim' as it relates to these statutes, is not sufficient . . . under Rule 8(a)").

Here, Plaintiff's allegations do not even identify the alleged "consumer fraud acts", let alone list the elements of each claim. (Complaint ¶¶ 38, 49-51.) Further, Plaintiff makes no effort to explain how Starbucks allegedly violated each of these unidentified "acts."

Accordingly, Plaintiff has failed to meet the basic pleading requirements of Rule 8(a) and her "multi-state" claims should be dismissed.  *In re Aluminum*, 2014 WL 4743425, at *1; *In re Trilegiant*, 11 F. Supp. 3d at 124.

## V.    **CONCLUSION**

For the foregoing reasons, Starbucks respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety.

DATED:    March 16, 2023

Respectfully submitted,

SHEPPARD, MULLIN,RICHTER &
    HAMPTON LLP


By:    /s/ *Sascha Henry*
Sascha Henry
CA State Bar No. 191914
*Pro Hac Vice*
shenry@sheppardmullin.com
Robert J. Guite
CA State Bar No. 244590
*Pro Hac Vice Application Forthcoming*
rguite@sheppardmullin.com
Paul Garrity
NY State Bar No. 2756419
pgarrity@sheppardmullin.com


30 Rockefeller Plaza
New York, New York 10112-0015
212.653.8700

Attorneys for Defendant Starbucks Corporation