UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

KRISTIE BROWNELL, *individually and
on behalf of all others similarly situated*,

                              Plaintiff,

          v.                                                    5:22-CV-1199
                                                                (FJS/ATB)
STARBUCKS COFFEE COMPANY,

                              Defendant.

_____

APPEARANCES                          OF COUNSEL

SHEEHAN & ASSOCIATES, P.C.           SPENCER SHEEHAN, ESQ.
60 Cuttermill Road                   THEODORE T. HILLEBRAND, ESQ.
Suite 412
Great Neck, New York 11021
Attorneys for Plaintiff

SHEPPARD MULLIN RICHTER &            PAUL W. GARRITY, ESQ.
HAMPTON LLP                          ROBERTY J. GUITE, ESQ.
30 Rockefeller Plaza                 SASCHA HENRY, ESQ.
39th Floor
New York, New York 10112-0002
Attorneys for Defendant


SCULLIN, Senior Judge


MEMORANDUM-DECISION AND ORDER

I. BACKGROUND

          Plaintiff Kristie Brownell commenced this diversity action on behalf of herself and all

others similarly situated against Defendant Starbucks Coffee Company, alleging that

Defendant's French Roast Ground 100% Arabica Coffee ("the Product"), as sold in stores and

online, is not actually 100% ground coffee because it contains added potassium at greater than

expected levels.  *See* Dkt. No. 1, Compl., at ¶¶ 1, 17-22.  Plaintiff asserts that added potassium can cause health risks for coffee drinkers with kidney issues, who are generally aware of the amount of potassium in coffee, and excess intake can cause hyperkalemia.  *See id.* at ¶ 19. Plaintiff also alleges that Defendant sells the Product at a premium price that is higher than similar products, approximately $10.99 for a twelve-ounce bag excluding tax, based on its misrepresentation that the Product is "100% Arabica Coffee."  *See id.* at ¶¶ 20, 22.

Plaintiff contends that she "read and relied on the '100% Arabica Coffee' statement to believe the contents included only ground coffee and not any additives," and she "paid more for the Product than she would have had she known the representations were false and misleading," or she would not have purchased it at all.  *See id.* at ¶¶ 34, 36.  Plaintiff seeks to represent a "New York Class," including "[a]ll persons in the State of New York who purchased the Products during the statutes of limitations for each cause of action alleged" and a "Consumer Fraud Multi-State Class," which would include "[a]ll persons in the States of Texas, South Dakota, Wyoming, Idaho, Alaska, Iowa, Virginia, South Carolina, and Utah who purchased the Products during the statutes of limitations for each cause of action alleged."  *See id.* at ¶ 38.

Plaintiff alleges the following causes of action against Defendant: (1) violations of Sections 349 and 350 of New York's General Business Law ("GBL") for false, misleading, and deceptive representations and omissions; (2) violations of various states' Consumer Fraud Acts, which prohibit the use of unfair or deceptive business practices; (3) breaches of express warranty, implied warranty of merchantability and fitness for a particular purpose, and the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, because Defendant described the Product so that Plaintiff believed its contents included only ground coffee and not any additives; (4) fraud based on Defendant's misrepresentation that the Product only contained ground coffee;

and (5) unjust enrichment based on the fact that Defendant obtained benefits and monies because the Product was not as represented and expected.  *See id.* at ¶¶ 45-68.

Pending before the Court is Defendant's motion to dismiss Plaintiff's complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Dkt. No. 14.  Plaintiff opposes the motion.  *See* Dkt. No. 20.

## II. DISCUSSION

### A.  Legal standards governing motions to dismiss

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept the material facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *LMC Indus. Contrs., Inc. v. Dominion Energy Transmission, Inc.,* No. 5:20-CV-677 (FJS/ATB), 2021 U.S. Dist. LEXIS 159441, *3 (N.D.N.Y. Aug. 24, 2021) (citing *Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (citation omitted)).  However, the court is not required to credit legal conclusions, bare assertions, or conclusory allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-81 (2009) (citations omitted).  As such, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S.] at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 [2007]).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing [*Twombly*, 550 U.S.] at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929).  Therefore, under this standard, a plaintiff must support her claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).  Thus, if the plaintiff has not "'nudged [her] claims' . . . 'across the line from

conceivable to plausible,'" the court must dismiss the complaint. *Id.* at 680 (quoting [*Twombly*, 550 U.S. at 570]).

"'The standard for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is "substantively identical" to the 12(b)(6) standard.'" *Rehab. Support Servs., Inc. v. City of Albany*, No. 1:14CV0499 (LEK/RFT), 2015 U.S. Dist. LEXIS 86081, *6 (N.D.N.Y. July 2, 2015) (Kahn, J.) (quoting *Berkovitz v. Vill. of S. Blooming Grove*, No. 09 CIV 0291, 2010 U.S. Dist. LEXIS 93563, 2010 WL 3528884, at *5 (S.D.N.Y. Sept. 3, 2010) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003))).  "'To survive a defendant's Rule 12(b)(1) motion to dismiss for lack of standing, plaintiffs must allege facts that affirmatively and plausibly suggest that [they have] standing to sue.'" *Id.* at *12 (quoting *Kiryas Joel Alliance v. Village of Kiryas Joel*, 495 F. App'x 183, 188 (2d Cir. 2012) (alteration in original) (internal quotation marks omitted)).

### B. Plaintiff's standing to pursue this action

"The Constitution limits federal courts' jurisdiction to actual cases or controversies." *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023) (citing U.S. Const. art. III, § 2).  "'The doctrine of standing gives meaning to these constitutional limits,' *Susan B. Anthony List v. Dreihaus*, 573 U.S. 149, 157, 134 S. Ct. 2334, 189 L. Ed. 2d 246 (2014), by requiring a plaintiff to 'allege[] such a personal stake in the outcome of the controversy as to warrant h[er] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on h[er] behalf,' *Warth v. Seldin*, 422 U.S. 490, 498-99, 95 S. Ct. 2197, 45 L. Ed. 3d 343 (1975) (internal quotation marks omitted)." *Id.*  "To satisfy the constitutional requirement of standing, plaintiffs in federal court bear the burden of establishing that (1) they have suffered an 'injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b)

- 4 -

actual or imminent, not conjectural or hypothetical'; (2) the injury is 'fairly traceable to the challenged action of the defendant'; and (3) it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"  *Soule v. Conn. Ass'n of Sch., Inc.*, 57 F.4th 43, 50 (2d Cir. 2022) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citations and internal quotation marks omitted)).  "'Particularized' injuries 'affect the plaintiff in a personal and individual way.'"  *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022) (quoting [*Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)] (internal quotation marks omitted)).  "Concrete injuries are 'physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts.'"  *Id.* at 442-43 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. ___, ___, 141 S. Ct. 2190, 2206, 210 L. Ed. 2d 568 (2021); *see also Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 63-64 (2d Cir. 2021)).

Defendant requests that the Court dismiss Plaintiff's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiff lacks standing to pursue this action since she has not alleged that she suffered a concrete and particularized harm.  *See* Dkt. No. 14-1, Def's Memorandum in Support, at 13.  Defendant's argument relies on *Gaminde v. Lang Pharma Nutrition, Inc.*, No. 1:18-cv-300 (GLS/DEP), 2019 U.S. Dist. LEXIS 48595 (N.D.N.Y. Mar. 25, 2019) (Sharpe, S.J.), to assert that Plaintiff does not have standing because she did not have the Product she purchased tested for added potassium.[1]  *See id.* at 13-14.  Additionally,

---

[1] In its reply, Defendant further agued that "Plaintiff's failure to test the [Product] she purchased is 'fatal' to establishing that she suffered an injury in a personal and individual way."  *See* Dkt. No. 23, Def's Reply, at 8 (quoting *Gaminde*, 2019 WL 1338724, at *2-3 (parenthetical omitted)).  The Court rejects this interpretation of *Gaminde*, which relies on caselaw from the 8th Circuit and does not directly address injuries based on price premiums.

Defendant argues that Plaintiff does not allege any facts to support her alleged "price premium" injury, such as identifying alternative products that are cheaper.  *See id.* at 14-15.

In Plaintiff's response, she appears to conflate a concrete and particularized injury sufficient for Article III standing with suffering an injury as an element of a cause of action. Plaintiff points to allegations in her complaint that she paid a premium price for the Product believing that it contained "Ground 100% Arabica Coffee" without any additives, including potassium.  *See* Dkt. No. 20, Pl's Memorandum in Opposition, at 16 (citing Dkt. No. 1 at ¶¶ 34-37).  According to Plaintiff, because these statements show that she allegedly suffered an injury under GBL § 349, she has also shown that she suffered a concrete and particularized injury to satisfy constitutional standing requirements.  *See id.*

"[M]ultiple courts have held that allegations that a plaintiff suffered a price premium injury is sufficient to support Article III standing at the motion to dismiss stage."  *Fishon v. Peloton Interactive, Inc.*, No. 19-cv-11711 (LJL), 2022 U.S. Dist. LEXIS 143930, *18 (S.D.N.Y. Aug. 11, 2022) (collecting cases); *see also Clinger v. Edgewell Pers. Care Brands, LLC*, No. 3:21-cv-1040 (JAM), 2023 U.S. Dist. LEXIS 41461, *17 (D. Conn. Mar. 13, 2023) (noting that "[o]verpayment for mislabeled products is a recognized injury-in-fact."  *See Patane v. Nestlé Waters North America, Inc. (Patane I)*, 314 F. Supp. 3d 375, 380 (D. Conn. 2018)); *Duchimaza v. Niagara Bottling, LLC*, 619 F. Supp. 3d 395, 409 (S.D.N.Y. 2022) (holding that a plaintiff's allegation that he paid a "price premium" for a product because of the defendant's allegedly false and misleading claim is "sufficient to plead an injury in fact.").  Courts within the Second Circuit have found that a plaintiff has alleged facts to satisfy constitutional standing requirements as long as the plaintiff's complaint plausibly alleges that she bought a product at an inflated price, and she would not have paid that price if the product had not been falsely

- 6 -

labeled.  *See, e.g., Duchimaza*, 619 F. Supp. 3d at 409; *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, *25 (S.D.N.Y. Aug. 11, 2016); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739, *31 (S.D.N.Y. May 7, 2015).

In Plaintiff's complaint, she specifically alleges that she "read and relied on the '100% Arabica Coffee' statement to believe the contents included only ground coffee and not any additives."  *See* Dkt. No. 1 at ¶ 34.  Plaintiff claims that she bought the Product at or exceeding $10.99 for twelve ounces, excluding tax, which was a "premium price" that was "higher than similar products, represented in a non-misleading way, and higher than [the Product] would be sold for absent the misleading representations and omissions."  *See id.* at ¶¶ 22, 35.  Plaintiff further asserts that she "paid more for the Product than she would have had she known the representations were false and misleading, or would not have purchased it."  *See id.* at ¶ 36. Although she has narrowly done so, when considering this early stage of litigation and that the Court must view these facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has plausibly asserted an injury in fact in that she allegedly paid a premium price for the Product based on Defendant's misrepresentation that it did not contain additives, including potassium.  Accordingly, the Court finds that Plaintiff has shown constitutional standing at this juncture to pursue her claims.

### C.  Whether Plaintiff has adequately alleged facts to support each of her claims

#### 1.  GBL §§ 349 and 350

"Section 349 of the GBL declares deceptive acts and practices unlawful and section 350 declares false advertising unlawful."  *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021); *see* N.Y. Gen. Bus. L. §§ 349, 350.  "'The standard for recovery under

[section] 350, while specific to false advertising, is otherwise identical to Section 349.'" *Id.*

(quoting *Denenberg v. Rosen*, 71 A.D.3d 187, 194, 897 N.Y.S.2d 391 (1st Dep't 2010) (quoting

*Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1, 774 N.E.2d 1190, 746 N.Y.S.2d

858 (2002))).  "There are three requirements for a claim under [New York's] GBL: 1) the

challenged act or practice was consumer-oriented; 2) the act was misleading in a material way;

and 3) the plaintiff suffered injury as a result of the challenged act." *Womack v. EVOL*

*Nutrition Assocs., Inc.*, No. 6:21-CV-00332 (BKS/TWD), 2021 U.S. Dist. LEXIS 238347, *21

(N.D.N.Y. Dec. 14, 2021) (Sannes, J.) (citing *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29, 731

N.E.2d 608, 709 N.Y.S.2d 892 (2000)).

    With respect to the first element, "[c]onsumer-oriented conduct encompasses acts or

practices that 'have a broad impact on consumers at large[.]'" *Tomassini v. FCA US, LLC*, No.

3:14-cv-1226 (MAD/DEP), 2016 U.S. Dist. LEXIS 202635, *12 (N.D.N.Y. Nov. 23, 2016)

(D'Agostino, J.) (quoting *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 320 (1995) (quotation

omitted)).  "Conduct that is sufficiently consumer oriented includes practices that constitute 'a

standard or routine practice that was "consumer-oriented in the sense that [it] potentially

affect[ed] similarly situated consumers."'" *Id.* (quoting *N. State Autobahn, Inc. v. Progressive*

*Ins. Group Co.*, 102 A.D.3d 5, 12, 953 N.Y.S.2d 96 (2d Dept. 2012) (internal citations

omitted)).  The parties do not appear to dispute that the Product's labeling was consumer-

oriented.

    "With regard to the second element, the New York Court of Appeals has adopted 'an

objective definition of deceptive acts and practices.'" *Id.* (quoting *Oswego* [*Laborers' Local 214*

*Pension Fund v. Marine Midland Bank, N.A.*], 85 N.Y.2d [20,] 26 [(N.Y. 1995)]).  "The test is

whether the misrepresentation or omission is 'likely to mislead a reasonable consumer acting

reasonably under the circumstances.'"  *Id.* (quoting [*Oswego*, 85 N.Y.2d] at 26).  "In determining whether a reasonable consumer would be misled, '[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole.'"  *Barreto*, 518 F. Supp. 3d at 802 (quoting *Pichardo v. Only What You Need, Inc.*, 20-cv-493 (VEC), 2020 U.S. Dist. LEXIS 199791, 2020 WL 6323775, at *2 (S.D.N.Y. Oct. 27, 2020) (citing *Wurtzburger v. Kentucky Fried Chicken*, 16-cv-08186, 2017 U.S. Dist. LEXIS 205881, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017)); *see also Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (parenthetical omitted)).

"'To plead an injury pursuant to either §§ 349 or 350, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase."'"  *Womack*, 2021 U.S. Dist. LEXIS 238347, at *21-*22 (quoting *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576 (S.D.N.Y. 2021) (citing *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015))).  "'[C]onsumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices[,] have not suffered an injury under [GBL] § 349.'"  *Id.* at *22 (quoting *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015) (internal quotations and annotations omitted) (quoting *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 679 (S.D.N.Y. 2012))).  "'Instead, a plaintiff must plead something more than the defendant's deception; for example, that the price of the product was inflated as a result of defendant's deception or that use of the product adversely affected plaintiff's health.'"  *Id.* (quoting *Colpitts*, 527 F. Supp. 3d at 576 (citing *Preira*, 885 F. Supp. 2d at 677); *see also Stutman v. Chemical Bank*, 95 N.Y.2d 24, 731 N.E.2d 608, 612, 709 N.Y.S.2d 892 (N.Y. 2000) (parenthetical omitted)).

Plaintiff's complaint includes a photograph of the Product at issue; and, in the lower left-hand corner of the photograph of the bag of coffee, Plaintiff has circled the phrase "Ground 100% Arabica Coffee." *See* Dkt. No. 1 at ¶ 1.  As part of Plaintiff's cause of action under GBL §§ 349 and 350, she alleges that she "saw and relied on the '100% Arabica Coffee' statement to believe the contents included only ground coffee and not any additives." *See id.* at ¶ 46. Plaintiff further alleges that "Defendant's false, misleading, and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions." *See id.* at ¶ 47.  Plaintiff then claims that she "would not have purchased the Product or paid as much if the true facts had been known, suffering damages." *See id.* at ¶ 48.  Elsewhere in her complaint, Plaintiff asserts that she paid a premium price of "approximately no less than $10.99 for 12 oz, excluding tax and sales," which was "higher than similar products." *See id.* at ¶ 22. She also alleges that "[a] normal cup of coffee contains about 116 milligrams of potassium," and that "added potassium maintains the coffee beans' flavor and aroma, while reducing and eliminating any bitterness." *See id.* at ¶¶ 14, 16.  Plaintiff alleges that "[r]ecent reports based on laboratory analysis indicated the Product has significantly greater than expected levels of potassium"; and, "[a]ccording to those knowledgeable about coffee production, this level is likely intentional, because of potassium's recognized use for this purpose." *See id.* at ¶¶ 17-18.

Plaintiff does not cite to any of those reports or attach them to her complaint.[2]  She does not point to any figure or other data set showing the amount of potassium in the Product.  She

---

[2] Because Plaintiff did not cite to or identify them in any way in her complaint, she cannot later "incorporate by reference" studies or articles pertaining to those analyses.  Thus, although Plaintiff attaches a "study" to her memorandum of law in response, the Court cannot consider it as part of the pleadings at this stage of litigation.  The Court further notes that, even if it could consider the "study" Plaintiff provided, such "study" appears to be an advertisement for Puroast, a competitor in the coffee market, rather than a scientific study.  *See* Dkt. No. 20-1.

does not allege that she suffered any kind of reaction as a result of heightened levels of potassium in the coffee, or that she has kidney issues and may have suffered a reaction. To the extent Plaintiff has alleged that she paid a prime premium for coffee free from added potassium, her vague allegations do not show that the Product, in fact, contains added potassium. The Court therefore finds that a vague reference to "[r]ecent reports based on laboratory analysis" without identifying those reports or results of that analysis are bare and conclusory assertions that, even if accepted as true, does not plausibly state a claim for relief as required under Rule 8 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8; *Ashcroft v. Iqbal*, 556 U.S. 662, 678-81 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hoffman v. Kraft Heinz Foods Co.*, No. 22-CV-397 (KMK), 2023 U.S. Dist. LEXIS 20929, *24-*25 (S.D.N.Y. Feb. 7, 2023).

Nonetheless, even if Plaintiff plausibly alleged that there was heightened potassium in the Product, the Court finds that she has not shown that a reasonable person would believe that "100% Arabica Coffee" meant that the Product contained ground coffee beans without any vitamins or minerals, including added potassium. As Plaintiff herself admits, even a "normal" cup of coffee allegedly contains 116 milligrams of potassium. *See* Dkt. No. 1 at ¶ 14. Furthermore, as Defendant points out in its memorandum of law, the word "arabica" simply refers to the plant from which the coffee bean was harvested. *See* Dkt. No. 14-1 at 21. The word "arabica" refers to a "coffee tree, *Coffea arabica*, native to Ethiopia but extensively cultivated in tropical climates" and also sometimes refers to "the coffee beans produced by this tree, and the typically mild-flavoured, high-quality coffee obtained from them." *Arabica,*

*Oxford English Dictionary* (3rd ed. 2013).[3]  The Court therefore finds that a reasonable

consumer acting under reasonable circumstances would understand the labeling of "100%

Arabica Coffee" on the Product to mean that the ground coffee beans are exclusively from the

arabica plant, and the Product does not contain coffee beans from any other type of coffee bean

producing plant.  Thus, the Court finds that a reasonable consumer would not assume "100%

Arabica Coffee" means coffee without additives, vitamins, or minerals.  *See Barreto*, 518 F.

Supp. 3d at 802-06.  Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's

causes of action under GBL §§ 349 and 350 for failure to state a claim.[4]


### 2.   State Consumer Fraud Acts

In Plaintiff's complaint, she alleges that "[t]he Consumer Fraud Acts of the States in the

Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by

Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of

commerce."  *See* Dkt. No. 1 at ¶ 49.  Plaintiff further alleges that "[t]he members of the

Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection

claims under the Consumer Fraud Acts of the States they represent and/or the consumer

protection statute invoked by Plaintiff."  *See id.* at ¶ 50.  Finally, Plaintiff asserts that

---

[3] Defendant relies on *Merriam-Webster*'s online dictionary definition of "arabica," which similarly provides that it is "an evergreen shrub or tree (*Coffea arabica*) yielding seeds that produce a high-quality coffee and form a large portion of the coffee of commerce," as well as meaning "the seeds of arabica especially roasted and often ground."  *Arabica*, *Merriam-Webster's Dictionary*, https://www.merriam-webster.com/dictionary/arabica (last accessed July 6, 2023).

[4] The Court does not address Defendant's alternative defense that the Food, Drug, and Cosmetic Act preempts Plaintiff's GBL §§ 349 and 350 claims as it found that Plaintiff failed to state a claim on the face of her pleadings.  *See Barreto*, 518 F. Supp. 3d at 806.

"Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages." *See id.* at ¶ 51.  Plaintiff never identifies the "Consumer Fraud Acts" that she alleges Defendant violated or how Defendant allegedly did so.  Without providing factual contentions or the grounds upon which she bases her alleged entitlement to relief, Plaintiff has made it "impossible for [D]efendant to assess what she ultimately hopes to prove." *Male v. Tops Friendly Mkts.*, No. 07-CV-6573, 2008 U.S. Dist. LEXIS 33004, *10-*11 (W.D.N.Y. Apr. 22, 2008).  Thus, the Court finds that this cause of action falls short of satisfying Rule 8's pleading requirements and grants Defendant's motion to dismiss Plaintiff's "Consumer Fraud Acts" claim.

### 3. Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose, and Magnuson Moss Warranty Act

Plaintiff generally alleges that Defendant breached an express warranty, breached the implied warranties of merchantability and fitness for a particular purpose, and violated the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.  See* Dkt. No. 1 at ¶¶ 52-65.

"To adequately state a claim for breach of an express warranty under New York law, plaintiffs must plead '(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by this breach.'" *Hawkins v. Coca-Cola Co.*, No. 21-CV-8788 (KMK), __ F. Supp. 3d __, 2023 U.S. Dist. LEXIS 20931, *27 (S.D.N.Y. Feb. 7, 2023) (quoting *Wynn*, 2021 U.S. Dist. LEXIS 9714, 2021 WL 168541, at *7 (quoting *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014))).  The Court finds that Plaintiff's express warranty claim fails as Plaintiff has not shown

that Defendant added potassium to the Product or that a reasonable consumer would interpret "100% Arabica Coffee" to mean that there were no additives, including vitamins and minerals. *See Barreto*, 518 F. Supp. 3d at 806.

"'Implied warranties include the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.'" *Lahey v. Bev. Mktg. USA, Inc.*, No. CV 19-1902 (SJF) (ARL), 2020 U.S. Dist. LEXIS 68049, *18 (E.D.N.Y. Apr. 16, 2020) (quoting *Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 530-31 (E.D.N.Y. 2012)). "'In New York, any implied warranty of merchantability is governed by Section 2-314 of the New York Uniform Commercial Code ("UCC"),' which provides, '"a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."'" *Id.* (citing [*Jackson*, 845 F. Supp. at 530-31] (citing N.Y. U.C.C. § 2-314(1))). "'[W]here the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality.'" *Id.* at *19 (quoting [*Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154 (JG) (RML), 2015 U.S. Dist. LEXIS 122186, *28 (E.D.N.Y. Sept. 14, 2015)] (citation omitted)). Although Plaintiff alleges that the Product did not conform to the promise of her interpretation of "100% Arabica Coffee," she does not allege that the Product is unfit for human consumption; and, thus, the Court grants Defendant's motion to dismiss Plaintiff's claim for breach of an implied warranty of merchantability. *See id.* at *19-*20.

Furthermore, under New York law, "'no implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss and not personal injury is alleged.'" *Anderson v. Unilever United States, Inc.*, 607 F. Supp. 3d 441, 458-59 (S.D.N.Y. 2022) (quoting *Colangelo v. Champion Petfoods USA, Inc.*, No. 18-

- 14 -

CV-1228, 2020 U.S. Dist. LEXIS 26919, 2020 WL 777462, at *11 (N.D.N.Y. Feb. 18, 2020) (quotation marks and other citations omitted)).  Courts applying New York law have routinely held that this extends to both alleged breaches of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.  *See id.* at 459.  "[R]emote purchasers, like Plaintiff, definitionally are not in privity with the manufacturers of the products that they buy."  *Id.* (citations omitted).  Thus, the Court additionally dismisses Plaintiff's claims for breach of the implied warranties of merchantability and fitness for a particular purpose because Plaintiff, as an end-consumer, does not have privity with Defendant, a manufacturer.  *See id.* at 460.

"The MMWA provides for a private right of action if a consumer is damaged based on a supplier's failure to comply with its obligations under a written or implied warranty." *Clemmons v. Upfield US, Inc.*, No. 22-cv-355 (PKC), 2023 U.S. Dist. LEXIS 57135, *25-*26 (S.D.N.Y. Mar. 31, 2023) (citing 15 U.S.C. § 2310(d)(1)).  Because Plaintiff's complaint fails to plausibly allege a breach of warranty, the Court finds that she necessarily fails to state a claim pursuant to the MMWA as well.  *See id.* (citing *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 587 (S.D.N.Y. 2021) ("[T]he absence of a qualifying warranty necessitates dismissal of the MMWA claim."); *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015) ("To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law.").

### 4.   *Common law claims for fraud and unjust enrichment*

"Under New York law, stating a claim for fraud requires alleging (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent

to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 U.S. Dist. LEXIS 9714, *21-*22 (S.D.N.Y. Jan. 19, 2021) (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)).  Putting aside the question as to whether Plaintiff alleged fraud with the requisite level of specificity under Rule 9(b) of the Federal Rules of Civil Procedure, the Court finds that Plaintiff has failed to allege a material misrepresentation of fact or omission since, as discussed above, a reasonable consumer would not conclude that the phrase "100% Arabica Coffee" on the Product's label communicates that it did not contain additives, such as potassium.  *See id.* at *22.  Thus, the Court grants Defendant's motion to dismiss Plaintiff's common law claim for fraud.

"A claim for unjust enrichment under New York State law requires that [p]laintiffs 'plead: 1) "that the defendant benefitted; 2) at plaintiff's expense[;] and 3) that equity and good conscience require restitution."'" *Gilleo v. J.M. Smucker Co.*, No. 20-CV-02519 (PMH), 2021 U.S. Dist. LEXIS 182299, *25 (S.D.N.Y. Sept. 23, 2021) (quoting *Yak v. BiggerPockets, L.L.C.*, No. 19-CV-05394, 2020 U.S. Dist. LEXIS 165759, 2020 WL 5505351, at *9 (S.D.N.Y. Sept. 10, 2020) (quotation omitted)).  The Court finds that Plaintiff's unjust enrichment claim also fails because, as discussed above, she has not plausibly alleged that Defendant made any misleading or incorrect statements.  *See Wynn*, 2021 U.S. Dist. LEXIS 7914, at *22. Additionally, "[a]ccording to the New York State Court of Appeals, '[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.'" *Gilleo*, 2021 U.S. Dist. LEXIS 182299, at *25 (quoting *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 967 N.E.2d 1177, 1185, 944 N.Y.S.2d 732 (N.Y. 2012)).  Therefore, because Plaintiff's unjust enrichment claim is that Defendant enriched itself by misrepresenting

the Product, which is duplicative of Plaintiff's "'core theory of deception,'" the Court additionally grants Defendant's motion to dismiss Plaintiff's unjust enrichment claim as duplicative.

### D. Rule 11 sanctions

"A court may sanction counsel for signing pleadings whose legal theories are not 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.'" *Weiss v. David Benrimon Fine Art LLC*, __ F. App'x __, 2021 U.S. App. LEXIS 38395, *4 (2d Cir. 2021) (summary order) (quoting Fed. R. Civ. P. 11(b)(2); *see also id.* 11(c)). "'[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend . . . the law as it stands.'" *Id.* (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990)). "The inquiry is one of 'objective unreasonableness and is not based on the subjective beliefs of the person making the statement.'" *Id.* at *5 (quoting *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) (citation omitted)).

In considering Defendant's motion to dismiss and preparing this Memorandum-Decision and Order, the Court learned that Plaintiff's counsel, Spencer Sheehan, Esq. of Sheehan & Associates, P.C., has filed no fewer than 18 actions in this District alone since 2021, all of which are class action lawsuits; and, of those that have been considered in a dispositive motion, none have proceeded past the motion to dismiss phase of litigation. *See e.g.*, *Lumbra v. Suja Life, LLC*, No. 1:22-CV-893 (MAD/DJS), 20223 WL 3687425 (N.D.N.Y. May 26, 2023) (granting the defendant's motion to dismiss class action complaint for failing to state a claim that the labeling on Suja Organic Juice falsely represents that it is "cold-pressed"); *Greco v.*

*TikTok, Inc.*, No. 5:22-cv-916 (BKS/ML), 2023 WL 3092861 (N.D.N.Y. Apr. 26, 2023) (granting the defendant's motion to dismiss class action complaint for lack of subject-matter jurisdiction). For many other cases, Plaintiff's counsel appears to swiftly seek voluntary dismissals before the defendant files an answer or a dispositive motion. *See e.g.*, *Hoover v. The Price Chopper, Inc.*, No. 1:21-CV-228 (BKS/ML), Dkt. No. 13 (voluntarily dismissing class action complaint alleging that the defendant mislabeled the vanilla flavoring in its PICS-brand yogurt); *McMenamy v. Nestle USA, Inc.*, No. 5:22-CV-1053 (TJM/ATB), Dkt. No. 6 (voluntarily dismissing class action complaint alleging mislabeled nutritional information on Ovaltine chocolate malt drink).

This Court also discovered that a court in the Southern District of New York recently admonished Mr. Sheehan for filing dozens of cases similar to this one in the past several years throughout the Second Circuit, with numerous courts dismissing near-identical challenges. *See Hoffman v. Kraft Heinz Foods Co.*, No. 22-CV-397 (KMK), 2023 U.S. Dist. LEXIS 20929, *18-*20 (S.D.N.Y. Feb. 7, 2023) (collecting cases). In addition, courts in the Southern District of New York have also twice threatened Mr. Sheehan with Rule 11 sanctions for filing "plainly frivolous claim[s.]" *Turk v. Rubbermaid Inc.*, No. 21-CV-270 (KMK), 2022 U.S. Dist. LEXIS 50230, *16 n.1 (S.D.N.Y. Mar. 21, 2022); *see Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 U.S. Dist. LEXIS 48769, *25 n.3 (S.D.N.Y. Mar. 18, 2022). The Court therefore believes that Mr. Sheehan is aware that he files class action lawsuits primarily pertaining to allegedly false labeling on consumer products – including causes of action for violations of GBL §§ 349 and 350, breach of express and implied warranties and the MMWA, and common law fraud and unjust enrichment – that plainly do not meet the pleading requirements for such claims on their faces. Nonetheless, Mr. Sheehan continues to file these frivolous actions in

violation of Rule 11(b)(2) of the Federal Rules of Civil Procedure.  Accordingly, given Mr.

Sheehan's history and experience in similar cases, which courts have dismissed for failure to

state a claim as this Court does here, this Court orders that Mr. Sheehan must show cause as to

why this Court should not sanction him for continually filing frivolous lawsuits in this District.

*See* Fed. R. Civ. P. 11(c)(3); *Optigen, LLC v. Animal Genetics, Inc.*, No. 5:10-CV-940

(FJS/DEP), 2011 U.S. Dist. LEXIS 174811, *15-*16 (N.D.N.Y. May 23, 2011) (stating that

"[a] court may initiate a sanction proceeding *sua sponte* by issuing a show-cause order" (citing

*In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003))).


### III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss, *see* Dkt. No. 14, is **GRANTED**; and the

Court further

**ORDERS** that Mr. Sheehan show cause why he has not violated Rule 11(b)(2) in the

manner noted above and why, if the Court finds that he has violated said Rule, the Court should

not impose sanctions against him for such violation.  In this regard, the Court instructs Mr.

Sheehan to file with the Court a letter brief, not to exceed five pages, setting forth his position

regarding this matter **on or before July 28, 2023**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case.

**IT IS SO ORDERED.**

Dated:  July 12, 2023
        Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge