25-189
*Sheehan v. Starbucks Corp.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of March, two thousand twenty-six.

**PRESENT:**
> **REENA RAGGI,**
> **ALISON J. NATHAN,**
> > *Circuit Judges,*
> **JESSE M. FURMAN,**
> > *District Judge.*[*]

_____

**Spencer Sheehan, Sheehan and Associates, P.C.,**

> *Respondents-Appellants,*

**Kristie Brownell,** *individually and on behalf of all others similarly situated,*

> *Plaintiff,*

_____

[*] Judge Jesse M. Furman, of the United States District Court for the Southern District of New York, sitting by designation.

CERTIFIED COPY ISSUED ON 03/17/2026

v.                                                      No. 25-189

**Starbucks Corporation,**

*Defendant-Appellee.*

_____

**FOR RESPONDENT-APPELLANT:**          Daniel R. Rose, Costello, Cooney & Fearon, PLLC, Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Scullin, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **REVERSED.**

Respondents-Appellants Spencer Sheehan and his law firm appeal from a November 30, 2023 order of the United States District Court for the Northern District of New York (Scullin, *J.*) holding Sheehan in civil contempt, and a January 2, 2025 order of that court directing him to pay $500 as a sanction for violating Federal Rule of Civil Procedure 11(b). Sheehan argues that he violated no court orders that could form the basis for a contempt sanction, and that Rule 11 sanctions

were unwarranted because he did not act in bad faith.   We agree and therefore reverse.

We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## I.   Contempt

We begin with the November 30, 2023 contempt order.   "[B]ecause the power of a district court to impose contempt liability is carefully limited, our review of a contempt order for abuse-of-discretion is more rigorous than would be the case in other situations in which abuse of discretion review is conducted." *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016) (quotation marks omitted).   "A court may hold a party in contempt if (1) the *order* the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner."   *Id.* (emphasis added).   Civil contempt may be imposed "to secure future compliance with court orders and to compensate the party that has been wronged," but not "as a purely punitive measure."   *Paramedics*

*Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004).   A civil contempt order therefore "has much different purposes than a Rule 11 sanction," which "is designed to punish a party who has already violated the court's rules."   *Willy v. Coastal Corp.*, 503 U.S. 131, 138–39 (1992).

We are aware of no court order that Sheehan violated, nor did the district court identify any such violation in its contempt adjudication.   *See* App'x at 145–58.   Rather, the district court apparently considered civil contempt and Rule 11 sanctions as a single issue, holding that "Mr. Sheehan [was] in civil contempt of court and, thus, subject to sanctions pursuant to Rule 11[.]"   *Id.* at 143.   In support, the court cited only cases involving Rule 11 sanctions, not contempt.   *See Id.* at 144–45.   In the absence of a violated order, we therefore conclude that, regardless of whether Rule 11 sanctions were warranted, the court's contempt order was erroneous and must be reversed.

## II.    Rule 11

We review Rule 11 sanctions orders for abuse of discretion, "which we will identify only where a district court ruling is based on an error of law or a clearly erroneous view of the facts, or cannot be located within the range of permissible

decisions." *Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 156 (2d Cir. 2010) (quotation marks omitted).  But "when, as here, the court issues sanctions *sua sponte* without offering the offender the opportunity to withdraw the offending submission, our review is more exacting than under the ordinary abuse-of-discretion standard."  *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013) (quotation marks omitted).

Unlike party-initiated Rule 11 sanctions, which are subject to safe-harbor protection and require only a finding of objective unreasonableness, Rule 11 sanctions initiated by a court "long after the lawyer had an opportunity to amend or withdraw" the filing in question require a finding of "subjective bad faith." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 151 (2d Cir. 2009) (quotation marks omitted).   "When a lower court sanctions a litigant for bad faith, the court must outline its factual findings with a high degree of specificity," *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 53 (2d Cir. 2018) (quotation marks omitted), and we review those findings for clear error, *see Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011).   A factual finding is clearly erroneous either if it "is without support" in the record, *Motown Prods., Inc. v. Cacomm, Inc.*, 849 F.2d 781, 787 (2d

Cir. 1988), or if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

Here, the district court imposed sanctions both because Sheehan relied on meritless legal theories, *see* Fed. R. Civ. P. Rule 11(b)(2), and because he failed to adequately verify the factual allegations in Plaintiff's complaint, *see* Fed. R. Civ. P. Rule 11(b)(3). Sheehan first argues that Rule 11(b)(3) sanctions were improper because the district court's order to show cause referred only to Rule 11(b)(2). We disagree. While "a party is entitled to notice of the provision under which sanctions are sought," *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 57 (2d Cir. 2000) (quotation marks omitted), Sheehan had sufficient notice here. Although the court's initial order to show cause cited only Rule 11(b)(2), the court subsequently held a hearing where it questioned Sheehan about his pre-filing investigation and permitted Sheehan to file additional materials in his defense. Sheehan then filed the additional materials, confirming that he was aware of the court's interest in his fact investigation. And Sheehan is incorrect that the district court's November 30 order cited only Rule 11(b)(2); rather, it cited Rule 11 and

11(b) more generally.[1]   We therefore conclude that the court adequately notified
Sheehan of both potential bases for sanctions.

We agree with Sheehan, however, that the district court abused its
discretion in imposing sanctions.   We have urged a construction of Rule 11 "that
allows innovation and zealous representation while punishing only those who
would manipulate the federal court system for ends inimicable to those for which
it was created," and have cautioned that "judges [should] refrain from imposing
sanctions where such action would stifle the enthusiasm or chill the creativity that
is the very lifeblood of the law."   *Motown Prods.*, 849 F.2d at 785 (quotation marks
omitted).   Here, Sheehan's legal arguments, even if unpersuasive, were not
objectively frivolous, nor does the record support a conclusion that he acted in bad
faith.   *Cf. id.* at 787.   Thus, the district court's bad faith finding was clearly
erroneous, and its imposition of sanctions was therefore an abuse of discretion.

With respect to Sheehan's legal theory, the district court determined that
there could be no consumer deception because no reasonable consumer would

---

[1]      That said, the district court's January 2, 2025 order imposed a $500 fine on
Sheehan "as a sanction for violating Rule 11(b)(2)" and made no reference to Rule
11(b)(3).   App'x at 145.   In any event, we proceed on the assumption that the district
court imposed sanctions pursuant to Rule 11(b)(3) as well.

interpret the label "Ground 100% Arabica Coffee" to mean that Defendant's coffee does not contain added potassium.  App'x at 58; *see id*. at 151–52.  While that interpretation may be better than Sheehan's, it is not so obviously correct that the lawsuit was frivolous.  Indeed, the Seventh Circuit has allowed similar claims about additives in parmesan cheese to proceed past a motion to dismiss, explaining that "certainly a plausible reading" of the phrase "100% Grated Parmesan Cheese" "is that '100%' applies to all three words: it's all cheese; all the cheese is Parmesan, and it's all grated."  *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 476-77 (7th Cir. 2020).  And the First Circuit, in a case featuring nearly identical language to that present here, observed that it would be "by no means unreasonable" for a consumer to read "Freshly Ground 100% Arabica Coffee" to mean "that the package contains only coffee (and Arabica coffee at that), with no nuts (or anything else)."  *Dumont v. Reily Foods Co.*, 934 F.3d 35, 41 (1st Cir. 2019).  While this court has not interpreted similar language, we do not think that advancing an argument supported by the reasoned opinions of our sister circuits to argue for an extension of our law can support a finding of bad faith.  "[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be

clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990). While perhaps "not persuasive," Sheehan's arguments "were not so untenable as a matter of law as to necessitate sanction." *Id.*

With respect to Sheehan's fact investigation, the district court faulted the complaint for failing to incorporate "any reports" to substantiate its allegation that "laboratory analysis indicated the Product has significantly greater than expected levels of potassium." App'x at 145–46 (quotation marks omitted). The court also noted that the study on which Sheehan relied "appeared to be an advertisement for Puroast Coffee Company . . . , which is a competitor in the coffee market, rather than a scientific study." *Id.* at 146.

But "[w]ith regard to factual contentions, sanctions may not be imposed unless a particular allegation is utterly lacking in support." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003) (quotation marks omitted). The report that Sheehan provided to the district court states that Puroast collaborated with an academic research laboratory to test potassium levels in Defendant's

coffee and confirmed higher levels in the product at issue here.  Sheehan also attested that he investigated further and found multiple newspaper articles reporting on those laboratory tests.  After filing the complaint, he sent out samples of the coffee to a different laboratory for independent testing, further militating against a finding of bad faith.  Together, this satisfies Rule 11's requirement of a "reasonable inquiry."  *See Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001).

Rather than determining that Sheehan's fact investigation was inadequate, the district court appears to have disregarded much of what Sheehan submitted after the sanctions hearing because the sources were not "attached to Plaintiff's complaint or her response in opposition to Defendant's motion [to dismiss], nor did Mr. Sheehan provide them to the Court in his initial responses to the Court's order to show cause prior to the hearing."  App'x at 151.  But Sheehan was not required to "plead evidence" in the form of studies or reports as long as the underlying allegations in the complaint were not entirely devoid of support.  *See Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 860 (2d Cir. 2021).  Nor does it matter that Sheehan sought independent testing only after filing the complaint,

10

as "a plaintiff is not required to know at the time of pleading all facts necessary to establish the claim." *Com. Cleaning Servs.*, 271 F.3d at 386. As for Sheehan's delay in describing his fact investigation to the district court, the court's order to show cause cited only Rule 11(b)(2) as a potential basis for sanctions. It is therefore understandable that Sheehan focused his initial responses on his legal theory, and only addressed his fact investigation after the court questioned its adequacy at the sanctions hearing.

In sum, Sheehan signed a complaint containing a colorable, if not ultimately successful, legal theory, and the district court erroneously disregarded Sheehan's proof that he conducted a reasonable pre-filing inquiry. The district court therefore clearly erred in finding that Sheehan acted in bad faith, and accordingly abused its discretion in *sua sponte* imposing Rule 11 sanctions.

\*     \*     \*

Accordingly, we **REVERSE** the district court's orders holding Sheehan in civil contempt and imposing sanctions under Rule 11.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit